Hitchcock, J.
This was an indictment, against the plaintiff in error, for a violation of the act of 1816, to prevent the *issuing and circulating of unauthorized bank paper, and the several acts amendatory thereto.
This act, of 1816, in the first place, makes it criminal for any person to act as an officer of any banking asociation not incorporated by a law of this state, and, for a violation of this provision of the law, indicts a penalty of §1,000.
The fourth section prohibits the receiving, and offering in payment, “the bond, bill, note, or contract of any such bank, knowing the same to be unincorporated,” under the penalty of three times the amount of the “bill, note, or bond” so received and offered in payment. It also prohibits an person from receiving, and actually passing or circulating, the “bond, bill, note, or con *74 tract of such bank, by delivery, without indorsing the same, knowing such bank to be unincorporated,” under the penalty or forfeiture of four times the amount of such “bill, bond, note, or contract,” so received, passed, and circulated. Swan’s Stat. 136. And it is further provided, in the same act, that all fines and forfeitures, imposed by the act, may be recovered by an action of debt, or by indictment.
Thus, it will be seen, that this act provided for those distinct classes of offenses, and inflicted different penalties, according to the nature of the offense. The first offense is that of acting as the officer of an unauthorized bank; penalty," one thousand dollars. The second, that of receiving and offering in payment a bill or note of such unauthorized bank; penalty, three times the amount of the bill or note offered in payment. Third, that of receiving, and actually passing and circulating the paper of such bank; penalty, four times the amount of the paper circulated.
This act of 1816 did not, however, prohibit any person from issuing his own individual notes, intending the same to circulate and pass as money. Whether this omission was in consequence of the-fact that notes of this desciplion had not then been put in circulation to any considerable extent, or from what other cause, we do not know. But immediately after the suspension of specie payments, by the banks, in 1837, *the country was flooded with paper of this description. The evil was felt to be a great one, and, at the next session of the general assembly, an effort was made to check it. On February 16, 1838, an act was passed, which took effect the 1st of July of the same year, to amend the act of 1816. The third section provides, “that from and after the taking effect of this act, it shall be unlawful for any individual to issue and put in circulation any bond, bill, note, order, or check, for the payment of money, whether written or struck upon an engraved plate, calculated or intended to circulate as a currency or medium of exchange, and which shall not be authorized by law; and any individual who shall so issue and put into circulation any such bond, bill, note, order, or check, or who shall offer any such in payment of money or property, knowing the same to be unauthorized by law, shall be subject to the same ¡penalties as is provided for in section 4 of the act of January 27, 1816, above referred to; and said penalties and forfeitures Bhall be re *75 coverable in the same manner as is pointed out in section 5 of said last-mentioned act,” etc.
By this section, two more offenses are added to those enumerated in the law of 1816, to wit: that of issuing, by an individual, notes, calculated and intended to pass as currency, and that of offering such notes in payment of money or property. The penalty annexed is the same as prescribed in section 4 of the act of 1816, that is, three or four times the amount of the paper issued or offered in payment. Whether, in a given case, the penalty should be three or four times the amount, would, perhaps, be a question of difficulty, as, in this respect, the law does not appear to be explicit.
In the three first counts of the indictment, the plaintiff in error is charged, or intended to be charged, with the offense specified in section 3 of the act of 1838, already recited. That is, the offense of issuing and putting in circulation his own individual notes, intending the same to circulate as currency, andi from the bill of exceptions, setting forth the evidence in the case, it is clear, to my mind, that, of the ^offenses charged in these counts, he was guilty. But, for some reason not apparent, he was, by the jury, found not to be guilty. If not guilty of these offenses, he certainly was not guilty of any offense whatever. In the fourth count of the indictment, the plaintiff in error was charged with having acted as an officer of a bank, not incorporated by law, was convicted of this offense, and was sentenced by the court, in pursuance of this finding, to pay a fine of $1,000 and the costs of prosecution.
To this judgment, it is objected that the fourth count of the indictment is insufficient in law.
This count, as already stated, is against the plaintiff in error, for acting as an officer of a bank not incorporated by law. It charges “ that the said James Steedman, on January 1, 1840, with force and arms, in the county aforesaid, and on divers other days, between that day and the day of finding this bill, did act as an officer of a bank not incorporated by law.” It is like the indictment in the case of Lougee v. State of Ohio, decided at the present term, and which was held by the court sufficient, except that the words in italic are not contained in the indictment of Lougee. Whother the fact that these words are contained in the indictment can vary the case, is perhaps questionable. We suppose that where the offense *76 consists of’ the performance of a specific act, it is necessary that it should be charged in the indictment to have been committed on a day certain, although it is not necessary that the proof should, in this respect, sustain the indictment. In other words, the offense may be proved to have been committed on a different day from that laid in the indictment. But whether, after having charged the offense upon one day, it will do to lay it with a continuando, upon divers other days, as in a declaration in trespass, is a different question. But for the purposes of this case, it is not necessary to decide this question.
The second error complained of is, that the court allowed said notes, mentioned in the bill of exceptions, to go to the jury as competent evidence to sustain the fourth count of said *indictment, the same being by law incompetent. The court was requested to charge the jury that those notes were not competent evidence, under the fourth count, which was refused. The notes, upon their face, were the individual notes of Steedman, and were aceompanied with proof that they were by him designed and intended to circulate as currency. These notes were proper evidence under the three first counts of the indictment. The act of 1816, under which the fourth count is framed, was intended to prevent any company, or association of persons, from acting as a banking association without being incorporated by law, and to prevent such association from putting in circulation any of their notes or bills, intending them to pass and circulate as money. To act as an officer of such l n association, is made highly penal. But how can a man act as an officer of such an institution or association, until the association itself is formed? To convict one of acting as an officer of such an association, it would tfe necessary, in the first place, to prove that there was such an association in existence. Where is there any evidence to this effect, in the case before us? The only evidence in the case, as stated in the bill of exceptions, which in the least' looks to such proof, is, that other persons were engaged with Steedman in having the plate engraved upon -which these notes were struck. Whether these other persons were the engravers, or persons who wished to use the same plate for engraving notes to be issued in their own individual names, or who they were, does not appear. Surely, this evidence can hardly be said to conduce to prove the existence of such an association as is prohibited by law, much less is it evidence of that fact. It might be one link *77 in a chain of evidence to prove the existence of an association ; but in the case before us, it is not only one link, but it is all the evidence we have. In the absence of proof of the existence of an association of the kind contemplated by law, these notes were not competent evidence under the fourth count in the indictment, and the court of common pleas erred in not so instructing the jury.
*But it is said, by the prosecuting attorney, that all the evidence given on the trial, is not contained in the bill of exceptions, and that this count is bound to presume that there were circumstances disclosed, which would justify the court of common pleas in refusing to charge as requested, and which would warrant the finding of the jury. Whether all the evidence, given in the case, is contained in the bill of exceptions, we do not positively know. In fact, the testimony, as narrated by the witnesses, is not given in that instrument, but the facts proved are stated, and, from the manner in which the bill is framed, the fair inference is, that they are all stated. It is true that if there had been no bill of exceptions in the case, we should have been bound to have presumed that all was correct.
But what are we asked to presume, in this case ? In order to sustain this judgment, we are asked to presume that there was testimony, before the court of common pleas, to prove the formation of a company or association, to do a banking business, without the authority of law, and to issue, and put in circulation, bonds, notes, or bills, payable to order, and indorsed in blank, or payable to bearer, with the intent that the same should pass as currency or money; that Steedman was an officer of said asociation ; and that the notes given in evidence, were issued by, or for, the benefit of said association. To presume this, would be to presume a great deal, for the sole purpose of sustaining a sentence, by which a man has been fined $1,000, for circulating his own individual notes, for which offense the law inflicts a penalty equal to four times the amount of the notes so circulated. Whatever we might presume, with respect to a bill of exceptions, in a civil case, we shall long hesitate, before, in a case so highly penal as this, we shall make presumptions like those now required of us, to sustain a judgment.
The general error being assigned, it is proper to inquire whether the court of common picas did not err, in refusing the motion for a new trial. I think anew trial should have been ordered. As before *78 remarked, the testimony given in the *ease clearly proved Steedman guilty of the charges laid in the first three counts of the indictment, but did not prove him guilty of the charge laid in the fourth count. As well might a man be convicted of burglary, upon proof that he had been guilty of larceny, as could Steedman, under the proof in this case, be convicted of acting as the officer of a bank. The truth is, he was acquitted of the offense of which he was guilty, and convicted of an offense of which he was innocent. And, as the jury may have been led into this error, by the mistake of the court, in refusing to charge as requested, I think the court erred in refusing a new trial. Judgment reversed.